UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:26-CR-00078-D-BM-1

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | MOTION TO SUPPRESS |
| MARK ANTHONY WOOD, JR. | |

COMES NOW, Mark Anthony Wood, Jr., by and through undersigned counsel, and respectfully moves this Court to suppress both the statements obtained during his arrest on August 6, 2025, and the physical evidence subsequently recovered from his truck. Law enforcement subjected Mr. Wood to custodial interrogation without first advising him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), in violation of the Fifth Amendment. During that unlawful interrogation, officers elicited statements that they then relied upon in developing probable cause to search Mr. Wood's truck.

Without those statements, officers lacked probable cause to invoke the automobile exception or any other recognized exception to the warrant requirement. Before questioning Mr. Wood, officers had observed only an ordinary digital scale, an object whose incriminating character was not immediately apparent and which, standing alone, did not furnish probable cause to search the vehicle. To the extent the Government contends Mr. Wood's unwarned statements supplied the missing probable cause, those statements, and the physical evidence derived from them, must

1

likewise be suppressed because the Government cannot establish that the statements were voluntary.

Accordingly, Mr. Wood respectfully requests that this Court suppress all statements obtained during the custodial interrogation and suppress all physical evidence recovered from the subsequent search of his truck. In the alternative, Mr. Wood respectfully requests that the Court conduct an evidentiary hearing to resolve any disputed issues of fact. In support of this motion, Mr. Wood states the following:

## BRIEF FACTS

On August 6, 2025, Sergeant Christopher Mandrick Collins of the Harnett County Sheriff's Office observed a red Chevrolet Silverado pulling a flatbed trailer carrying a tractor traveling eastbound on Old U.S. Highway 421. Sergeant Collins immediately recognized the vehicle as belonging to Mr. Wood and knew that there was an outstanding order for arrest for Mr. Wood's failure to appear on a second-degree trespassing charge.

Rather than initiating a traffic stop immediately, Sergeant Collins followed the truck as it continued to 380 Community Road. After the truck pulled into the driveway and came to a stop, Sergeant Collins pulled in behind it and activated his blue lights.

As Sergeant Collins exited his patrol vehicle, he observed a man kneeling near the truck's front tire. Sergeant Collins asked, "Hey, what's up, man. Yo, what are you

2

doing?" The man stood up, approached Sergeant Collins, and identified himself as Mark.

At approximately 9:55 PM, Sergeant Collins detained Mr. Wood. Sergeant Collins handcuffed him and searched him. Throughout the encounter, Mr. Wood remained cooperative and compliant. At no point before the ensuing questioning did any officer advise Mr. Wood of his rights under *Miranda v. Arizona*.

Rather than executing the outstanding order for arrest and promptly transporting Mr. Wood to a magistrate, the officers remained at the scene and discussed whether they possessed a lawful basis to search the truck. Body-worn camera footage reflects that officers considered whether a traffic violation had occurred that might justify a warrantless search. After confirming that the trailer's lights were functioning properly and reviewing dash camera footage to determine whether Mr. Wood had failed to use this turn signal, the officers concluded that no traffic violation had occurred. Nevertheless, they continued to detain Mr. Wood while attempting to identify another basis for searching the vehicle.

At approximately 10:03 PM, while Mr. Wood remained handcuffed, an officer observed a digital scale through the truck's window and proceeded to ask Mr. Wood, "What's up with the scale?" Mr. Wood responded, "I've got a drug habit."

The officers continued their questioning by asking Mr. Wood, "Is there anything in the truck that I need to know about? Be honest with me." Mr. Wood responded, "Um, there's a blunt that's in my bag," and further acknowledged there was a small amount of marijuana in the back seat of the truck.

3

Only after obtaining these unwarned, involuntary statements did the officers search the truck. During that search, officers recovered a digital scale and methamphetamine from the center console, as well as a handgun located behind the driver-side front tire.

On April 28, 2026, the grand jury returned an Indictment alleging that on August 6, 2025, Mr. Wood did knowingly and intentionally: (1) distribute five (5) or more grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); (2) at a time separate and apart from the offense alleged above, possess with the intent to distribute fifty (50) or more grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); and possess a firearm in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, as charged in Count Seven of this Indictment, in violation of Title 18, United States Code, Section 924(c)(1)(A). See Indictment, ECF-1.

## **ARGUMENT**

The Fourth and Fifth Amendments impose separate constitutional limitations on law enforcement conduct, both of which are implicated here. The Fifth Amendment protects individuals from being compelled to incriminate themselves and requires law enforcement officers to advise a suspect of the procedural safeguards established in *Miranda v. Arizona* before subjecting the suspect to custodial interrogation. 384 U.S. 436 (1966). Statements obtained through custodial interrogation conducted without

those safeguards are inadmissible in the Government's case-in-chief. *Id.* at 444. Moreover, where the government seeks to rely on an unwarned statements to justify the seizure of physical evidence, it bears the burden of establishing that the statements were voluntary. *Oregon v. Elstad*, 470 U.S. 298, 307 (1985); *Lego v. Twomey*, 404 U.S. 477, 489 (1972). Although the Supreme Court has held that the physical fruits of an unwarned but voluntary statement are not automatically excluded, the exclusionary rule continues to apply where a statement is actually compelled or involuntary. *United States v. Patane*, 542 U.S. 630, 632-34 (2004); *Id.* at 644-45 (Kennedy, J., concurring in the judgment).

Independently, the Fourth Amendment protects against unreasonable searches and seizures and generally requires law enforcement officers to obtain a warrant before conducting a search. Warrantless searches "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). Where law enforcement officers act without a warrant, the Government bears the burden of establishing that a warrantless search falls within one of those narrow exceptions. *Id.*

Neither constitutional requirement was satisfied here. After taking Mr. Wood into custody, officers interrogated him without first advising him of his rights under *Miranda.* During that interrogation, officers obtained incriminating statements that they, in turn, relied upon to develop probable cause to search his truck. At the same time, the warrantless search cannot be justified under the Fourth Amendment

because officers lacked probable cause independent of those statements, and the observation of a digital scale, standing alone, did not justify the search under any recognized exception to the warrant requirement because the scale's incriminating character was not immediately apparent. Accordingly, both Mr. Wood's statements and the physical evidence recovered from the truck must be suppressed.

I. **Officers Violated Mr. Wood's Fifth Amendment Rights by Subjecting Him to Custodial Interrogation Without First Advising Him of His Miranda Rights.**

To prevail on a Miranda claim, a defendant must demonstrate that he was both in custody and subjected to interrogation before being advised of his constitutional rights. *Miranda*, 384 U.S. at 436. Here, those requirements are readily satisfied. The record establishes that Mr. Wood had been handcuffed and searched before officers began questioning him. It also establishes that the officers' questions were expressly designed to elicit incriminating information concerning suspected criminal activity. Because officers initiated custodial interrogation without first administering the warnings required by *Miranda*, Mr. Wood's statements and the evidence derived from those statements, as discussed below, must be suppressed.

a. **Mr. Wood Was in Custody for Purposes of Miranda.**

Miranda warnings are required whenever a suspect is subjected to custodial interrogation. *Miranda,* 384 U.S. at 444. A person is "in custody" for *Miranda* purposes when, under the totality of the circumstances, his freedom of movement is restrained to the degree associated with a formal arrest, as determined by an objective inquiry into whether "a reasonable man in the suspect's position would have

6

understood his situation" to constitute custody. *Berkemer v. McCarty*, 468 U.S. 420, 440, 442 (1984).

The Supreme Court has instructed that courts consider all the circumstances surrounding the interrogation, including "the location of the questioning … its duration … statements made during the interview … the presence or absence of physical restraints during the questioning … and the release of the interviewee at the end of the questioning." *Howes v. Fields*, 565 U.S. 499, 509 (2012) (internal citations omitted).

The custody determination here is straightforward. At approximately 9:55 PM, Sergeant Collins handcuffed Mr. Wood and searched him. Those restraints remained in place throughout the interrogation, and Mr. Wood was not released from custody at the end of the questioning. He was never told he was free to leave, nor could a reasonable person in his position have believed otherwise. Accordingly, Mr. Wood was in custody for purposes of Miranda when officers questioned him.

### b. Law Enforcement Subjected Mr. Wood to Interrogation Before Advising Him of His Miranda Rights.

*Miranda's* protections are triggered when a suspect in custody is subjected to interrogation through "either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). "Interrogation" includes not only express questioning but also "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301.

7

Here, the officers expressly questioned Mr. Wood. After handcuffing him and searching him, officers observed a digital scale inside the truck. They asked Mr. Wood, "What's up with the scale?" This question was plainly investigative in nature. Any reasonable officer would have known it was likely to elicit an incriminating response concerning suspected drug activity. Indeed, Mr. Wood responded by admitting, "I've got a drug habit."

The officers continued the interrogation by asking, "Is there anything in the truck that I need to know about? Be honest with me," a question plainly designed to elicit admissions of criminal activity. Unsurprisingly, Mr. Wood responded by admitting that there was "a blunt" in his bag and that there was a small amount of marijuana in the truck.

These questions were not requests for biographical information or other routine booking questions, nor were they necessary to consummate Mr. Wood's arrest on the failure to appear warrant. Instead, they were direct investigative inquiries concerning suspected criminal conduct. Under *Innis*, they constitute express interrogation because they were questions that officers should have known were reasonably likely to elicit incriminating responses. *See id.* at 300-01.

Critically, officers asked each of these questions before advising Mr. Wood of his *Miranda* rights. At the time of the questioning, Mr. Wood was in custody. Nevertheless, no *Miranda* warnings were administered before officers sought incriminating admissions concerning the contents of the truck.

**c. Because Mr. Wood Was Subjected to Custodial Interrogation Without Miranda Warnings, His Statements Must Be Suppressed.**

The Supreme Court has made clear that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444.

The Government cannot satisfy its burden here. Mr. Wood was taken into custody before officers questioned him. Without first advising Mr. Wood that he had the right to remain silent, that any statement could be used against him, or that he had the right to counsel, officers questioned him about the contents of his truck and obtained incriminating admissions. Because those statements were obtained during custodial interrogation conducted without the procedural safeguards required by *Miranda*, the statements themselves are inadmissible in the Government's case-in-chief. *Miranda*, 384 U.S. at 444.

Moreover, the Government bears the burden of proving that Mr. Wood's statements were voluntary. *Lego*, 404 U.S. at 489. That burden assumes particular significance here because officers relied upon Mr. Wood's statements in developing the asserted justification for searching his truck. As discussed below, if the Government cannot establish that those statements were voluntary under the totality of the circumstances, both the statements themselves and the physical

evidence derived from them must be suppressed. *See Patane*, 542 U.S. at 632-34; *Elstad*, 470 U.S. at 306-07.

## II. The Warrantless Search of Mr. Wood's Truck Violated the Fourth Amendment.

The Fourth Amendment protects individuals against unreasonable searches and seizures and generally requires law enforcement officers to obtain a warrant before conducting a search. *Arizona*, 556 U.S. at 338. Warrantless searches "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Id.* (quoting *Katz*, 389 U.S. at 357 (1967)). The Government bears the burden of demonstrating that a warrantless search falls within one of those narrow exceptions.

Here, the Government cannot satisfy that burden. Officers searched Mr. Wood's truck without a warrant after detaining him. Before questioning Mr. Wood, officers lacked probable cause to believe the truck contained contraband or evidence of criminal activity. The subsequent observation of an ordinary digital scale likewise failed to establish probable cause because its incriminating character was not immediately apparent. The Government cannot rely on Wood's involuntary statements about the purpose of the scale or the contents of the truck to establish probable cause. Accordingly, the search cannot be justified under the automobile exception or any other recognized exception to the warrant requirement.

**a. The Government Cannot Show Mr. Wood's Statements Were Voluntary.**

The Government may contend that, even if officers initially lacked probable cause to search Mr. Wood's truck, his unwarned admissions supplied the missing probable cause necessary to justify the search. That argument fails because the Government cannot show that Mr. Wood's statements were voluntary.

It is well established that any waiver of a constitutional right, including the Fifth Amendment privilege against self-incrimination, must be made "voluntarily, knowingly, and intelligently." *Colorado v. Spring*, 479 U.S. 564, 572 (1987). An involuntary statement violates due process and is subject to the exclusionary rule. *Jackson v. Denno*, 378 U.S. 368, 385-86 (1964). Whether a statement was voluntary depends upon the totality of the circumstances surrounding the interrogation, including the characteristics of the defendant, the setting of the interview, and the details of the interrogation. *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987). A confession is voluntary only if it is "the product of a rational intellect and a free will." *Blackburn v. Alabama*, 361 U.S. 199, 208 (1960). Both physical intimidation and psychological coercion may render a confession involuntary. *Townsend v. Sain*, 372 U.S. 293, 307 (1963).

The Supreme Court has recognized that the prophylactic protections established by *Miranda* sweep more broadly than the Fifth Amendment itself. *Oregon v. Elstad*, 470 U.S. 298, 306-07 (1985). Consequently, the failure to administer Miranda warnings creates a rebuttable presumption of compulsion. Before a challenged confession may be admitted into evidence, "the prosecution must prove at

11

least by a preponderance of the evidence that the confession was voluntary." *Lego v. Twomey*, 404 U.S. 477, 489 (1972).

Here, officers handcuffed Mr. Wood and searched him. Rather than consummating the arrest and transporting him to the jail, they lingered at the scene in an effort to conjure a lawful basis to search the truck. After determining that no traffic violation had occurred and seeing the scale, officers turned their attention to Mr. Wood. Without first advising him of his constitutional rights, officers questioned him about the scale. They then immediately broadened their inquiry by asking whether there was "anything in the truck" they needed to know about and admonishing him to "be honest." Under these circumstances, the Government cannot prove that Mr. Wood's statements were the product of a free and unconstrained choice rather than the product of custodial interrogation conducted after officers had already decided to seek a basis for searching the truck.

### b. The Digital Scale, Standing Alone, Did Not Supply Probable Cause.

The automobile exception permits officers to search a vehicle without a warrant when they possess probable cause to believe the vehicle contains contraband or evidence of criminal activity. *United States v. Baker*, 719 F.3d 313, 317 (4th Cir. 2013). Probable cause exists only when, under the totality of the circumstances, the facts known to officers would warrant a reasonably prudent person in believing that evidence of criminal activity would be found inside the vehicle. *Id.* at 319.

Without Mr. Wood's statements, the officers lacked probable cause to search his truck. Mr. Wood had been detained solely on an outstanding order for arrest

12

arising from a failure-to-appear charge, which would not give rise to probable cause to search his truck. By approximately 9:58 PM, officers had handcuffed him and completed a search of his person. That search revealed no controlled substances, weapons, or other contraband. Mr. Wood had not been driving erratically; the officers had not seen any drugs inside the truck; and the officers had not detected the odor of controlled substances emanating from the truck.

Although the officers observed a digital scale through the truck's window, a scale is not inherently contraband, and its presence alone did not establish probable cause. The Fourth Circuit has recognized that a kitchen scale is an "everyday object" whose "predominant purpose" is not criminal. *United States v. Davis*, 94 F.4th 310, 320 (4th Cir. 2024) (quoting *United States v. Runner*, 43 F.4th 417, 422 (4th Cir. 2022)). An otherwise innocuous object, such as a kitchen scale, acquires an immediately apparent incriminating character only when the surrounding circumstances provide probable cause to connect that object to criminal activity. *See id.* at 319-20; *Runner,* 43 F.4th at 421-23.

In *Runner*, for example, the Fourth Circuit cautioned that the observation of a pipe alone would not necessarily establish probable cause. 43 F.4th at 423. The pipe became incriminating only when considered alongside an anonymous report of ongoing drug use, physical indications of prior drug use, the officer's drug-recognition expertise, and the recognized use of that particular pipe to consume narcotics. *Id.* Likewise, in *Davis*, the incriminating character of an everyday object arose from its

proximity to substantial independent evidence of drug trafficking, including controlled substances, firearms, ammunition, and cash. 94 F.4th at 313-14, 318-19.

No comparable circumstances existed here. There is no evidence to suggest the scale was accompanied by physical indications of prior drug use, a report of ongoing drug use, or the opinion of an officer with drug-recognition expertise. Before questioning Mr. Wood, the officers were not investigating a narcotics offense and had discovered no contraband when they searched Mr. Wood's person. Thus, the scale's observation alone did not give officers probable cause to search the truck.

### c. The Search of the Truck Was the Fruit of the Poisonous Tree.

Rather than arresting Mr. Wood and transporting him to a magistrate, officers remained at the scene after they detained Mr. Wood attempting to identify a lawful basis to search the truck. Body-worn camera footage shows that officers considered whether a traffic violation had occurred, reviewed dash-camera footage, and ultimately determined that no such violation existed. Only then did officers turn their attention to questioning Mr. Wood about the scale they had observed inside the truck.

Without first administering Miranda warnings, officers asked, "What's up with the scale?" After Mr. Wood responded that he had "a drug habit," officers immediately continued by asking whether there was anything in the truck they needed to know about. Mr. Wood admitted there was a blunt in his bag and marijuana in the truck.

Only after obtaining those incriminating admissions did officers search the truck and recover the scale, methamphetamine, and, later, a handgun. The chronology of events demonstrates a direct causal relationship between the unwarned

14

interrogation and the search. Before questioning Mr. Wood, the officers had observed only an ordinary household object that did not independently establish probable cause. The interrogation supplied the missing connection between the contents of the truck and suspected drug activity. The ensuing search was therefore the direct product of Mr. Wood's unwarned statements.

### d. The Physical Evidence Must Be Suppressed.

The exclusionary rule prohibits the Government from introducing evidence obtained through violations of the Fourth and Fifth Amendments. *See Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963). Here, the search of Mr. Wood's truck cannot be sustained under either constitutional framework.

First, the warrantless search violated the Fourth Amendment because officers lacked probable cause to search the truck before questioning Mr. Wood. At the time Mr. Wood was questioned, officers possessed only an outstanding order for arrest on an unrelated offense and had observed a digital scale whose incriminating character was not immediately apparent. As discussed above, these facts did not establish probable cause to invoke the automobile exception or any other exception to the Fourth Amendment's warrant requirement. The officers' subsequent search, therefore, violated the Fourth Amendment, and the physical evidence recovered during that search must be suppressed.

Second, to the extent the Government argues that Mr. Wood's unwarned admissions supplied the probable cause necessary to search the truck, it bears the burden of proving that those statements were voluntary before it can rely upon them.

*Lego,* 404 U.S. at 489. As explained above, officers deliberately subjected Mr. Wood to custodial interrogation without first advising him of his *Miranda* rights after they had exhausted other avenues for justifying a search of the truck. *United States v. Patane* does not permit reliance upon those statements to justify the subsequent search, and the physical evidence obtained as a result must likewise be suppressed, because the Government cannot show that Mr. Wood's statements were voluntary. 542 U.S. at 632-34.

Because the Government cannot justify the warrantless search under the Fourth Amendment and Mr. Wood's unwarned statements are presumed involuntary, the search violated Mr. Wood's constitutional rights. Accordingly, the physical evidence recovered from his truck should be suppressed.

## **CONCLUSION**

For the foregoing reasons, Defendant Mark Anthony Wood, Jr., respectfully requests that the Court suppress all statements obtained from Mr. Wood during the custodial interrogation conducted on August 6, 2025. Mr. Wood further requests that all physical evidence recovered during the subsequent warrantless search of his truck, including all evidence derived therefrom, be suppressed as well. Alternatively, Mr. Wood requests an evidentiary hearing on this matter to resolve any factual disputes that may arise.

Respectfully requested this 27th day of July, 2026.

G. ALAN DUBOIS
Federal Public Defender

***/s/ Robert J. Parrott Jr,***
ROBERT J. PARROTT JR.
Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
150 Fayetteville Street, Suite 450
Raleigh, North Carolina 27601
Telephone: 919-856-4236
Fax: 919-856-4477
E-mail: Robert_Parrott@fd.org
N.C. State Bar No. 46312
LR 57.1 Appointed Counsel

17

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served upon:

JAREN E. KELLY
Assistant United States Attorney
United States Attorney's Office
Eastern District of North Carolina
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601

by electronically filing the foregoing with the Clerk of Court on July 27, 2026, using the CM/ECF system which will send notification of such filing to the above.

    This the 27th day of July, 2026.

*/s/ Robert J. Parrott Jr.*

ROBERT J. PARROTT JR.
Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
150 Fayetteville Street, Suite 450
Raleigh, North Carolina 27601
Telephone: 919-856-4236
Fax: 919-856-4477
E-mail: Robert_Parrott@fd.org
N.C. State Bar No. 46312
LR 57.1 Appointed Counsel