UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:26-CR-00078-D-BM-1

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARK ANTHONY WOOD, JR. | MOTION TO SUPRRESS EVIDENCE AND INCORPORATED MEMORANDUM OF LAW |

COMES NOW Defendant Mark Anthony Wood, Jr., by and through undersigned counsel, and hereby moves this Court for an order suppressing any and all evidence seized in violation of his Fourth Amendment rights. Officers violated Mr. Wood's constitutional rights when, on August 13, 2025, without a search warrant or valid consent, they searched his safe. The Court should suppress all physical evidence, namely, the firearms found in the safe.

## RELEVANT FACTS

On August 6, 2025, Mr. Wood was arrested for failure to appear in court, drug trafficking, and firearm possession. A week later, on August 13, agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) visited Mr. Wood's mother, Charlene West, at her house in Fayetteville, North Carolina.

Agents spoke with Ms. West about her son, and she indicated that Mr. Wood kept a safe in a "spare" bedroom closet in the home. She further explained that Mr. Wood's wife had come to the house on August 11, 2025 to store personal items in the bedroom closet. Officers did not have a warrant to search the home, so they asked

Ms. West if she would sign a consent form to search Mr. Wood's bedroom closet. She signed a consent form that specified only the "bedroom closet" as the area to be searched.

Ms. West showed the agents the closet, where they found some firearms and a stand-up safe. Ms. West stated that the firearms belonged to Mr. Wood. The safe was locked. Agents asked for the combination to the safe, and Ms. West instructed that the code was written on the wall of the closet. They unlocked the safe, searched it, and recovered more firearms. Ms. West stated that the contents of the safe belonged to Mr. Wood.

On April 28, 2026, Mr. Wood was indicted in the Eastern District of North Carolina for seven counts of violating 21 U.S.C. § 841(a)(1) and two counts of violating 18 U.S.C. § 924(c)(1)(A).

## ARGUMENT

As the United States Supreme Court has repeatedly emphasized, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). A search conducted pursuant to valid consent is a well-recognized exception to the Fourth Amendment's warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Trulock v. Freeh*, 275 F.3d 391, 401 (4th Cir. 2001). For a third party to give valid consent to a warrantless search, the person must exercise "common authority

2

over or other sufficient relationship to the premises or effects" being searched. *See United States v. Matlock*, 415 U.S. 164, 171 (1974) (holding that a third party had authority to consent to the search of a bedroom she shared with the defendant); *but see Reeves v. Warden, Md. Penitentiary*, 346 F.2d 915, 926 (4th Cir. 1965) (holding that the homeowner did not have authority to consent to the search of an unlocked bureau drawer in his son's room, where the bureau was primarily for the son's use and use by others was incidental).

The Government bears the burden of establishing that common authority exists. *See Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). Courts recognize common authority to consent in each person whose mutual use of the property demonstrates "joint access or control for most purposes." *Matlock*, 415 U.S. at 171 n.7. While apparent authority is occasionally sufficient, *see United States v. Buckner*, 473 F.3d 551, 554 (4th Cir. 2007) (holding that the defendant's wife had apparent authority to consent to the search of shared computer leased in her name, where the defendant committed online fraud using accounts opened under her name), such a belief by law enforcement must be in good faith and reasonable based on all facts known by police at the time of the search. *See Rodriguez*, 497 U.S. at 186–87; *see also United States v. Iraheta*, 764 F.3d 455, 464–65 (5th Cir. 2014) (holding that an officer's belief that the driver had authority to consent to a search of all luggage in the trunk was unreasonable, although no one informed him that the luggage did not belong to driver, the driver and passengers stated they were traveling, and the amount of luggage was consistent with the number of travelers).

"While authority to consent to search of a general area must obviously extend to most objects in plain view within the area, it cannot be thought automatically to extend to the interiors of every discrete enclosed space capable of search within the area." *United States v. Block*, 590 F.2d 535, 541 (4th Cir. 1978). "Common experience of life, clearly a factor in assessing the existence and the reasonableness of privacy expectations, surely teaches all of us that the law's 'enclosed spaces' mankind's valises, suitcases, footlockers, strong boxes, etc. are frequently the objects of his highest privacy expectations, and that the expectations may well be at their most intense when such effects are deposited temporarily or kept semi-permanently in public places or in places under the general control of another." *Id.* When a third-party occupant gives consent to search a space, such consent does not confer the ability to search all objects within that space, and personal enclosed spaces demand heightened scrutiny of common authority. *See United States v. Peyton*, 745 F.3d 546, 553 (D.C. Cir. 2014) (holding that the defendant's great-grandmother had no common authority over defendant's shoebox in their shared apartment, and the defendant did not assume the risk of outsiders rummaging through closed containers to discover items not in plain view).

In *Block*, the defendant used a room in his mother's house. 590 F.2d at 537. When law enforcement came to the home, the mother gave consent to search the defendant's room. *Id.* Law enforcement found a locked footlocker in the room and opened it to search. *Id.* The Court held that the search was unlawful because defendant's mother could not consent to a search of an 'enclosed space' of the

4

defendant's because she did not have common authority over the footlocker. *Id.* at 542. The Court distinguished this from cases where a defendant assumes the risk of inspection by a third party by sharing a common premises on the principle that "each such enclosed space stands on its own bottom for this purpose." *Id.* at 541.

In *Buckner*, this Court held that the defendant's wife lacked actual authority to consent to a search of his password-protected computer files on their shared home computer because her husband used a password. 473 F.3d at 554. The Court distinguished *Block*, however, reasoning that in *Block*, the defendant's wife had apparent authority because she did not tell law enforcement the files were password-protected. *Id.* at 555. When officers possess actual knowledge of facts—such as the existence of a password or a lock—that show an attempt to exclude third party access, the apparent authority of a third party to consent is defeated.

In assessing access, the question is not whether or not the third party could theoretically access the object or had ever, in fact, accessed the object. Rather, the question is whether that access was meaningful and so regularly acted upon that the defendant would have no reasonable expectation of privacy in the interior of that object. In *Reeves v. Warden*, the Court considered whether a note recovered from an unlocked bureau drawer in a room used primarily by the defendant was within the ambit of his mother's consent to search the home. 346 F.2d at 924–26. In that case, members of the home, other than defendant, had used the bureau on occasion to deposit things such as the defendant's folded clothes. *Id.* at 924. The district court also found that the note belonged to his mother, but the Court discarded that finding

on the basis that such claims of ownership were not credible and compelled by the prosecution of the defendant. *Id.* at 926 n.28. The Court stated: "[i]f one person, even a member of the household, may on one occasion, without the knowledge or consent of the user, secrete a single object in one drawer of a bureau habitually and exclusively used by that person and thereby acquire the power to destroy the right of privacy secured to the user by the Fourth Amendment, then 'the right of the people to be secure in their persons, houses, papers, and effects' becomes an illusory guarantee indeed." *Id.* at 925–26.

Mr. Wood had a reasonable expectation of privacy in the contents of his locked safe at the Fayetteville home, and Ms. West did not have the common authority to consent to a search of the locked safe. There is no evidence that Ms. West claimed to use the safe or regularly inspected its contents. There are unanswered questions as to how the "spare" bedroom was used and accessed and by whom. It appears that Mr. Wood made primary use of the bedroom and closet in question by keeping valuable personal belongings there. Moreover, Mr. Wood kept many of these items in a locked safe, which clearly signaled his expectation of privacy in their contents. At the very least, an evidentiary hearing is necessary to resolve any residual questions surrounding access, control, and mutual use. *See United States v. Bowman*, 106 F.4th 293, 300 (4th Cir. 2024) (holding that an evidentiary hearing for a motion to suppress is required when the record is insufficient to resolve factual disputes that affect a constitutional claim).

The instant case is strikingly similar to *Block* and *Reeves*, where a third-party consented to a search of a space and the search transformed into a search of objects within that space. Here, Ms. West consented to a search of the bedroom closet, but she did not have the authority to consent to a search of the locked safe within the closet. *Block* should control this Court's ruling. The safe was locked, signaling an expectation of privacy on Mr. Wood's part, thus agents could not reasonably believe that Ms. West had common authority over the safe. While the combination to the safe was on the wall, it was clearly not so obvious that the agents saw it, as they had to ask Ms. West for the combination. Ms. West did not know what was in the safe, indicating her lack of common authority. Ms. West stated that Mr. Wood's wife had come by days prior to drop off things in the closet and she did not see what Wood brought into the house and put in the bedroom closet.

If this Court finds it relevant that the combination was written on the wall, then it should look to *Reeves*. In *Reeves*, the bureau was unlocked and was theoretically accessible by anyone in the home who entered the room. 346 F.2d at 924. In fact, it was accessed by the defendant's mother on various occasions. *Id.* This did not constitute common access and did not defeat the defendant's claim of a reasonable expectation of privacy. *Id.* at 925. Any argument to the contrary would render the Fourth Amendment's protections "illusory." Id. at 926. This case is also similar to *Katz v. United States*, 389 U.S. 347, 352 (1967), where the defendant's private conversation was shielded by nothing more than the glass door of a phone booth. The phone booth was not locked and the government, in that case, argued that the

transparency of the glass defeated the defendant's expectation of privacy. Surely, a voyeur could have observed Katz in the booth. Anyone could very well open the door and overhear Katz's private conversation. Anyone using a phone booth in 1967 would have assumed such a risk. However, the symbol of the phone booth—a private, enclosed space to talk on the phone—guided the Court's analysis, not any hyper-technical assessment of whether access by others was possible. Here, the symbol of the locked safe where officers had reason to believe its contents are controlled by Mr. Wood should prevail over a hyper-technical assessment of who could potentially access it.

To the extent that Ms. West's reticence to state that the safe's contents belonged to Mr. Wood made it ambiguous who had control of the safe, this Court should look to the *Reeves* Court's handling of the conflicting testimony over ownership of the note. It is common for close family members to prevaricate about the possession of potential contraband out of concern for a family member under criminal investigation. Ms. West did so when she claimed the interior contents of the safe were hers after the ATF agents opened the safe. The agents then explained to Ms. West the potential ramifications of being involved in a federal criminal investigation, and she immediately broke down crying, explaining that the contents of the safe belonged to her son, Mr. Wood. But the circumstances indicate that agents already knew this prior to searching the safe. First, Ms. West explained that Mr. Wood's wife had deposited items in the closet and that she did not know what they were, which signaled that she was unfamiliar with the contents of the closet. Second, there is no

indication that Ms. West was under investigation, so it is unclear why agents would search the safe if they did not believe it contained the property of Mr. Wood, who *was* under investigation. Third, the agents explained to Ms. West that, based on their investigation of Mr. Wood, they believed the firearms to be stolen, further undermining the reasonableness of the belief that the safe belonged to Ms. West.

Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment is inadmissible in a criminal trial against the victim of the illegal search or seizure. *United States v. Gaines*, 668 F.3d 170, 173 (4th Cir. 2012); *see also Weeks v. United States*, 232 U.S. 383, 39193 (1914). Thus, the exclusionary rule reaches not only primary evidence acquired as a direct result of an illegal search or seizure, but also evidence later discovered and derived from such a search, commonly referred to as the "fruit of the poisonous tree." *Nardone v. United States*, 308 U.S. 338, 341 (1939); *United States v. Seidman*, 156 F.3d 542, 548 (4th Cir. 1998). A court should therefore suppress evidence obtained, either directly or indirectly, as the result of "unlawful police conduct." *Nix v. Williams*, 467 U.S. 431, 441 (1984) (citing *Wong Sun v. United States*, 371 U.S. 471, 485 (1963)). When law enforcement unlocked Mr. Wood's safe, it was a search. That warrantless search was not justified by any well-delineated exception and was, therefore, illegal. But for that search, the recovered weapons would not have come into plain view. For that reason, all physical evidence discovered within the safe must be suppressed as the fruit of an illegal search.

## CONCLUSION

It is the government's burden to show that Ms. West had common authority over the locked safe to consent to its search. The facts and circumstances surrounding the search do not support a reasonable belief that Ms. West had common authority over the locked safe. For that reason, agents lacked valid consent to search the bedroom closet safe and violated Mr. Wood's Fourth Amendment rights. Accordingly, the fruits of this search should be suppressed.

WHEREFORE, Mr. Wood respectfully requests that this Court enter an order suppressing all evidence found after law enforcement unlawfully unlocked Mr. Wood's safe. To the extent it will assist the Court in deciding this matter, Mr. Wood requests an evidentiary hearing.

Respectfully requested this 27th day of July 2026.

G. ALAN DUBOIS
Federal Public Defender

**/s/ Robert J. Parrott Jr.**
ROBERT J. PARROTT JR.
Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
150 Fayetteville Street, Suite 450
Raleigh, North Carolina 27601
Telephone: 919-856-4236
Fax: 919-856-4477
E-mail: Robert_Parrott@fd.org
N.C. State Bar No. 46312
Counsel Appointed

*CERTIFICATE OF SERVICE*

I HEREBY CERTIFY that a copy of the foregoing was served upon:

Jaren E. Kelly
United States Attorney's Office
150 Fayetteville Street, Ste 2100
Raleigh, NC 27601
Email: jaren.kelly@usdoj.gov

by electronically filing the foregoing with the Clerk of Court on July 27, 2026, using the CM/ECF system which will send notification of such filing to the above.

This the 27th day of July, 2026.

/s/ Robert J. Parrott Jr.
ROBERT J. PARROTT JR.
Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
150 Fayetteville Street, Suite 450
Raleigh, North Carolina 27601
Telephone: 919-856-4236
Fax: 919-856-4477
E-mail: Robert_Parrott@fd.org
N.C. State Bar No. 46312
Appointed
